In re Frederick W. GOUX, Debtor.

Ronald GUALTIERI, Plaintiff,

v.

Frederick W. GOUX, Defendant.

Bankruptcy No. 85–00118.
Adv. No. 85–0047.

United States Bankruptcy Court,
N.D. New York.

Sept. 4, 1986.

McMahon & Grow, Rome, N.Y., for plaintiff; Raymond A. Meier, of counsel.

Vincent R. Corrou, Jr., Utica, N.Y., for defendant.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

On February 13, 1985, Frederick W. Goux ("Debtor") filed his petition for relief under Chapter 13 of Title 11 of the United States Code ("Code"). By Order of the Court dated May 21, 1985, the case was converted to one under Chapter 7.

On July 9, 1985, Ronald Gualtieri ("Gualtieri") filed his complaint objecting to the dischargeability of a particular debt pursuant to Code § 523(a)(2)(A). Gualtieri amended his complaint on March 10, 1986

to include a cause of action under Code § 523(a)(4). On April 7, 1986, Debtor moved to dismiss the amended complaint, or in the alternative convert the case back to a Chapter 13 proceeding pursuant to Code § 706. The Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(I) and § 1334.

## FINDINGS OF FACT

Sometime in August, 1977, Gualtieri gave Debtor $10,000.00 for the latter's acquisition of a bond on the former's behalf. Debtor failed to purchase the bond, did not apply the sums to any account on Gualtieri's behalf, and never returned the funds to Gualtieri. As a result, Debtor was charged in a criminal action with the felony of grand larceny.

As a result of a plea bargain, Debtor pled guilty to a reduced charge of petit larceny on April 14, 1982, receiving a sentence of probation and restitution. On May 17, 1985, upon his release from probation, Debtor executed a Confession of Judgment on Gualtieri's behalf in amount of $8,035.00. This sum represented the amount of court-ordered restitution less payments received during probation.

Debtor executed the Confession of Judgment after the filing of his bankruptcy petition, during the pendency of the automatic stay. The Confession of Judgment was prepared by the Oneida County Department of Probation, with Gualtieri neither requesting or securing the same. Debtor seeks to discharge this obligation, and thus requests dismissal of Gualtieri's amended complaint.

As to Debtor's alternative relief of Code § 706 conversion, Debtor alleges the prior Court-conversion was the result of the Chapter 13 Trustee's insistence that the income of Debtor's spouse be considered in determining income. Debtor refused to acquiesce in this regard as the scheduled obligations were incurred prior to marriage, and were those of the Debtor individually. When Debtor failed to voluntarily convert to Chapter 7, he alleges the conversion occurred without his notice or his consent.

## ARGUMENTS

Debtor relies upon *In re Robinson*, 776 F.2d 30 (2d Cir.1985) for the proposition that the restitution due Gualtieri is a debt, Code § 101(11), and thus dischargeable.

Gualtieri similarly relies upon *In re Robinson, supra*, pointing to certain facts which differentiate the present matter from the case presented the United States Court of Appeals for the Second Circuit.

## CONCLUSIONS OF LAW

### I. MOTION TO DISMISS

In *In re Robinson, supra*, the Second Circuit held that criminal restitution payments are "debts" within the meaning of the Code, and, to the extent that such debts compensate for actual pecuniary loss, are not excepted from discharge by Code § 523(a)(7). In that case, the debtor had been convicted of larceny, and ordered to make restitution of the Public Assistance benefits she had wrongfully received. After making a few monthly payments, debtor filed her voluntary petition under Chapter 7; her schedule of creditors listed the outstanding obligation for the restitution payments.

The state agency to whom restitution was paid, although notified of debtor's petition, and advised of the bar date for filing of Code § 523(c) complaints, failed to file a proof of claim, an objection to discharge, or a complaint to determine the dischargeability of its claim. Debtor was thereafter granted a discharge, and her attorney then wrote the state agency, stating debtor's position that the discharge operated to nullify her restitution obligations. Although debtor's attorney requested the state agency to contact the attorney immediately if the agency disagreed with debtor's view, the state agency did not respond. Debtor then ceased restitution payments.

Nearly three years later, the state agency contacted the debtor, informed her of its policy that restitution payments were

deemed nondischargeable, and requested resumption of payments.

The Court of Appeals, adopting the admitted minority position, held

that any right to the payment of restitution is a claim within the meaning of the Code; and that if any person or entity has a right to receive a payment of restitution from the bankruptcy debtor, the obligor has a debt within the meaning of the Code. *id.,* at 36.

Specifically rejected were the *"Pellegrino"* line of cases which had held, as a matter of public policy, similar restitution payments to fall outside the Code's definition of "debt". *See, e.g. In re Pellegrino,* 42 B.R. 129 (Bankr.D.Conn.1984); *In re Button,* 8 B.R. 692 (Bankr.W.D.N.Y.1981); *In re Oslager,* 46 B.R. 58 (Bankr.M.D.Pa.1985); *In re Vik,* 45 B.R. 64 (Bankr.N.D.Iowa 1984); *In re Cornell,* 44 B.R. 528 (Bankr.D.Conn. 1984); *In re Mead,* 41 B.R. 838 (Bankr.D. Conn.1984); *In re Cox,* 33 B.R. 657 (Bankr. M.D.Ga.1983); *In re Johnson,* 32 B.R. 614 (Bankr.D.Colo.1983); *In re Magnifico,* 21 B.R. 800 (Bankr.D.Ariz.1982).

As to the ultimate question of whether the restitution debt was dischargeable, the Court of Appeals concerned itself only with Code § 523(a)(7), for while subsections (a)(2) and (a)(4) therein were noted to have potential applicability, "the Code does not exclude debts within these subsections from discharge if the creditor does not object to discharge." *In re Robinson, supra,* at 39. *See,* Code § 523(c); H.R.Rep. No. 595, 95th Cong., 2d Sess. 342 *reprinted in* 1978 U.S.Code Cong. & Ad.News, 5787, 5963 ("If the creditor does not act, the debt is discharged." *Id.,* at 365, 1978 U.S.Code Cong. & Ad.News 5963, 6321.). Thus, as the state agency had failed to timely file a complaint, the Court of Appeals was constrained to analyze dischargeability under subsection (a)(7) only.[1] The Court of Appeals then reached its conclusion "that a debt that has compensation for actual pecuniary loss as at least one of its purposes is

not, to the extent that it does not exceed the amount of the loss, excepted from discharge by [Code] § 523(a)(7)". *Id.,* at 40. *Cf. United States v. Dudley,* 739 F.2d 175, 177 (4th Cir.1984) ("forfeiture" designed to penalize a wrongdoer, while "restitution" is compensatory).

Thus, the present case presents the precise scenario the Court of Appeals surmised would not have been before it had the state agency timely exercised its rights under Code § 523(c). Gualtieri *has* timely filed his complaint, and while the Court makes no findings on the merits at this juncture, subsections (a)(2)(A) and (a)(4) of Code § 523 appear particularly applicable. Thus, Debtor's motion to dismiss Gualtieri's complaint is denied.

## II. MOTION TO CONVERT

The Court has reviewed the entire case file herein, as well as the Bankruptcy Clerk's tape recordings of the Debtor's original Code § 341 meeting, and the confirmation hearing held on April 11, 1985 before the Honorable Leon J. Marketos, Bankruptcy Judge.

Debtor's Code § 341 meeting on April 11, 1985 was terminated rather abruptly when loggerhead was reached over Debtor's refusal to include his spouse's income in the Plan. The Trustee noted he would refuse recommendation of confirmation on this basis, and indicated that Debtor could more appropriately proceed in a Chapter 7 case. Debtor's counsel stated he would take the matter up with Judge Marketos at the later confirmation hearing.

At the confirmation hearing, later that day, Debtor's counsel reiterated his client's position that the spouse's income not be considered when calculating available income for the Plan. Judge Marketos stated that if the spouse "didn't want to contribute, you [Debtor] have no business in Chapter 13". At that juncture, Debtor's counsel replied "O.K., ... Seven, ..., I'll submit an

---

**1.** "We suspect that had objection been made on the ground that the debt was for an established larceny, the [bankruptcy] court would have ex-

cepted it from discharge, and the case would not be before us now." *Id.,* at 39.

order." Judge Marketos then stated that the case was converted to Chapter 7.

The Bankruptcy Courtroom Deputy notes from April 11, 1985 include notations that Debtor's counsel was telephoned on April 20, 1985 regarding the order to be submitted; Debtor's counsel indicated to the Deputy that he would contact the Trustee, who would then submit an order. The Trustee submitted the order to the Court via letter dated May 13, 1985 (received and filed May 16, 1985), with the order converting the case to Chapter 7 signed by Judge Marketos on May 21, 1985.

Thereafter, the case proceeded as like any other—by order dated May 23, 1985, Debtor was directed to file a list of post-petition debts, executory contracts, and attorney's fees with the interim trustee (who accepted appointment on May 28, 1985). Notice of conversion and order for a Code § 341 meeting issued on May 24, 1985. By order dated July 19, 1985, the Chapter 13 Trustee's accounts were approved and the Chapter 13 Trustee discharged.

Due to Debtor's failure to appear at the Code § 341 meeting originally set for June 18, 1985 (as well as the adjourned dates of July 16, 1985 and August 27, 1985), the Bankruptcy Clerk's office, by letter dated September 5, 1985, informed Debtor's counsel of a final adjourned date of September 17, 1985. Debtor's counsel was informed that were no appearance made on that date, the case would be scheduled for dismissal. By letter dated September 10, 1985, Debtor's counsel, for the first time since the conversion Order had been signed in May, stated that his client had not consented to the original conversion; he continued by stating that a motion would be brought to have the case continued as one under Chapter 13. Other than the alternative relief requested in the present case, no such motion has ever been made by the Debtor.

By letter notice of a show cause hearing dated October 29, 1985, the Bankruptcy Clerk's office sought to compel production of the items ordered produced by the May 23, 1985 order.[2] Hearing on this matter was adjourned eight times, most often at the request of Debtor's counsel; on April 28, 1986, the Court finally removed the matter from the Court's calendar pending decision herein.

In the interim, however, Debtor was granted a discharge in the Chapter 7 case on November 8, 1985. The Debtor's discharge hearing was scheduled for November 21, 1985.

■ The foregoing directly contradicts Debtor's counsel's statements that the conversion was entered without notice or consent, for it was Debtor's counsel himself who stated at the hearing on April 11, 1985 that he would submit the order converting the case. Debtor and his counsel were thereafter apprised on numerous occasions by the continued issuance of documents, notices and orders from the Court and the Bankruptcy Clerk's office, that the case was proceeding as one under Chapter 7. It was not until nearly four months had passed did Debtor's counsel assert the charge of lack of notice or consent, and nearly four months after that when formal request to convert back to Chapter 13 was made.[3]

■ When a case has previously been converted to one under Chapter 7 via Code § 1307, Debtor loses his otherwise unfettered one-time ability to seek conversion under Code § 706(a). In the present case, Judge Marketos, after notice and hearing, and upon the express request and acknowledgement of Debtor's counsel in open court, ordered conversion of the present case to Chapter 7. Arguments at this time that conversion was undertaken without consent or notice are contradicted by Debt-

---

**2.** The elapse of time between these orders was due to the retirement of Judge Marketos, and the delay in the appointment of his successor.

**3.** Debtor first moved for an order converting the chapter 7 case to one under Chapter 13 by motion dated January 6, 1986. This motion was made in response to the adversary complaint filed herein.

or's failure to assert this claim at an earlier stage of the proceedings. The Debtor's conduct has allowed the case to proceed to a Chapter 7 discharge; were the Court to order conversion as requested, such would only reward Debtor for his past supine performance.[4]

## ADDENDUM

 The Court notes that the confession of judgment herein, executed as it was during the pendency of Debtor's case, was therefore entered in contradiction to the provisions of Code § 362(a)(1). As such, the judgment is void as a matter of law. *In re Barefoot*, 43 B.R. 608, 609 (Bankr.E. D.N.C.1984); *In re Mully*, 41 B.R. 799, 800 (Bankr.W.D.N.Y.1984); *In re Bray Enterprises, Inc.*, 38 B.R. 75, 79 (Bankr.D.Vt. 1984). Such a finding does not, however, forestall Gualtieri's right to prove the specifics of his claim before the Court pursuant to Code § 523(a)(2) and (4).

As a consequence of the foregoing, it is

ORDERED:

1. Debtor's motion seeking dismissal of Gualtieri's adversary complaint is denied.

2. Debtor's alternative motion to convert the present case to one under Chapter 13 is denied.

3. The Bankruptcy Clerk's office is directed to set this matter on for pre-trial conference.

---

**4.** In any event, it is clear that Debtor's refusal to modify his Plan to include his spouse's income, constituted sufficient grounds justifying Court-ordered conversion under Code § 1307(c)(5).