**In re Charles C. HEINCY and Sharon L. Heincy, Debtors.**

**SUPERIOR COURT OF the STATE OF CALIFORNIA, Appellant,**

v.

**Charles C. HEINCY and Sharon L. Heincy, Appellees.**

BAP No. SC 86–1467–VAsMo.
Bankruptcy No. 84–04106–LM13.
Adv. No. C85–0751–LM13.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued Oct. 29, 1986.

Submitted Nov. 12, 1986.

Decided Sept. 16, 1987.

Susan J. Boyle, Deputy Counsel, San Diego, Cal., for appellant.

Charles E. Duff, Jr., Dempsey, Dempsey & Duff, Vista, Cal., for appellees.

Before: VOLINN, ASHLAND and MOOREMAN, Bankruptcy Judges.

ASHLAND, Bankruptcy Judge:

The Superior Court of the State of California appeals from an order of the bankruptcy court enjoining the State's enforcement of a criminal restitution order against Chapter 13 debtor Charles C. Heincy.

This appeal concerns a question not specifically addressed in the United States Supreme Court's recent decision in *Kelly v. Robinson*, 479 U.S. ——, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), a Chapter 7 case in which the Court held that 11 U.S.C. § 523(a)(7) "preserves from discharge any condition a state criminal court imposes as part of a criminal sentence." After reviewing the supplemental briefing from both parties on the impact of the *Robinson* decision, we conclude that the Court's rationale does not extend to Chapter 13 cases, and accordingly affirm the bankruptcy court.

### FACTS

The following undisputed facts are derived from the bankruptcy court's memorandum of decision, published at 58 B.R. 930 (Bankr.S.D.Cal.1986).

In June 1983, Joseph and Trudi Boylan hired Charles Heincy to oversee completion of a home remodeling project. Boylan la-

ter discovered that Heincy had embezzled $7,500 that was supposed to have been paid over to a roofing contractor. When confronted, Heincy promised to repay Boylan the embezzled amount, plus a $5,700 loan, plus all money he had received for his services, if Boylan would not prosecute.

Attempts to negotiate a satisfactory repayment schedule failed, and Boylan lodged a criminal complaint in February 1984.

Heincy filed a Chapter 7 bankruptcy petition on March 23, 1984, listing Boylan, but not the State, as an unsecured creditor with a $13,000 claim. The Heincys received their Chapter 7 discharge on September 24, 1984 and on the same day filed the present Chapter 13 petition, listing Boylan as a creditor with a $7,250 claim.

In August 1984, Heincy was charged with, and pleaded guilty to, one count of grand theft. At the sentencing hearing on November 19, 1984 the Superior Court ordered suspension of Heincy's criminal sentence for five years, subject to the following conditions: (1) two days in custody, (2) thirty days of public service, and (3) payment of $17,250 (the total of all monies Boylan had paid to Heincy) in restitution at the rate of $400 per month, commencing January 1, 1985. Apparently, the monies paid to the State pursuant to this order were turned over by the State directly to Boylan without any deductions.

The bankruptcy court confirmed Heincy's Chapter 13 plan on December 11, 1984. The plan provides for 100 percent repayment to creditors, including the scheduled amount of $7,250 denominated "restitution" payable to Boylan. Heincy's payments are $486 per month for 36 months.

The debtors found it financially impossible to make both the monthly $400 restitution payments and the $486 Chapter 13 plan payments. On July 11, 1985 they filed a complaint, pursuant to 11 U.S.C. § 105(a), to enjoin the State from continuing to collect the restitution payments.

The bankruptcy court entered a temporary restraining order and preliminary injunction against the Superior Court, pending a hearing on the merits. At the hearing, Heincy apparently testified that he was unable to make both sets of payments, and that his Chapter 13 plan would fail if enforcement of the restitution order were not enjoined.

## DISCUSSION

The issues here are twofold, first we must determine whether restitution is a "debt" as defined in 11 U.S.C. § 101 et seq. In doing so we must consider the effect of the Supreme Court decision in *Kelly v. Robinson*, 479 U.S. ——, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), on a Chapter 13 bankruptcy case. We must determine whether the established policy that a bankruptcy court should not invalidate the results of a state criminal proceeding would preclude defining restitution as a dischargeable debt.

The Bankruptcy Code defines "debt" as liability on a claim. 11 U.S.C. § 101(11). "Claim" is defined as a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, etc. 11 U.S.C. § 101(4).

These terms are subject to a very broad interpretation. Section 101(4) was intended to give an even broader definition of "claim" than was found in the former debtor rehabilitation chapters

> By this broadest possible definition and the use of the term throughout Title 11 ... the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court.

H.R.Rep. No. 95–595, p. 309 (1977); S.Rep. No. 95–989, p. 22 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5808, 6266.

Many of the cases which held that restitution is not a debt have done so for two reasons; either because there was no "right to payment", *See, e.g., In re Pellegrino*, 42 B.R. 129, 132 (Bankr.Conn.1984), or for policy reasons that bankruptcy should not be a "haven for criminals" and a

bankruptcy court should not interfere with criminal sanctions. *See*, Kratsch, *Restitution vs. Debtor's Relief: An Update*, Norton Bankruptcy Law Advisor, No. 8, August 1986. We find neither of these reasons compelling. The very language of the California statute under which the restitution order was imposed states, "A restitution fine shall be deemed a debt of the defendant owing to the state for the purposes of Sections 12418 and 12419.5 of the Government Code, excepting any amounts the defendant has paid to the victim as a result of the crime." California Government Code § 13967.5(b) (1983). The wording of the restitution statute has an effect on whether the restitution order creates a "right to payment". *See, Kelly v. Robinson*, 479 U.S. ——, 107 S.Ct. 353, 365 n. 4, 93 L.Ed.2d 216 (1986) (Marshall, J., dissenting).

Furthermore, we do not believe that an interpretation of § 101(4) or § 101(11) should be altered by the policy to prevent bankruptcy from becoming a "haven for criminals" in the absence of this suggestion in the statute itself or in the legislative history. A court should not evaluate policy arguments that contradict the language of the statute, this should be done by a legislature. *In re Hall*, 752 F.2d 582, 590 (11th Cir.1985). Very strong evidence of explicit language from the legislative history is necessary to overcome the plain meaning naturally to be drawn from the language of a statute. *In re Seidel*, 752 F.2d 1382, 1385 (9th Cir.1985). On their face the definitions of "claim" and "debt" in the Bankruptcy Code encompass a restitution payment, and there is no legislative history which would suggest exclusion of restitution payments from these definitions. On the contrary, the legislative history, as indicated above, requires the "broadest possible" definition of a claim.

The Supreme Court in *Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985), applied a broad definition to a "claim" under the Bankruptcy Code. (An obligation of the debtor to comply with a state court injunction requiring it to clean up a hazardous waste disposal site was a "debt" or "liability on a claim" subject to

discharge under the Bankruptcy Code.) The Court stated, "it is apparent that Congress desired a broad definition of a 'claim' and knew how to limit the application of a provision ... when it desired to do so." *Id.* at 279, 105 S.Ct. at 708.

The Court in *Kelly v. Robinson, supra,* refrained from determining whether restitution is a "debt" within the meaning of § 101(11), although the Court expressed serious doubts whether Congress intended it to be a "debt". The Court ultimately held that the restitution was excepted from discharge pursuant to § 523(a)(7) of the Bankruptcy Code (this section excepts from discharge any *debt*, "to the extent such *debt* is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for any actual pecuniary loss.") (emphasis added). Section 523(a) only applies to debts; if restitution were not a debt it would not be subject to any exception to discharge under § 523. Thus, the *Kelly v. Robinson* case is a good illustration of the reason to classify restitution as a debt. The Bankruptcy Code revolves around "debts" and "claims". *See*, H.R.Rep. No. 95–595, p. 309 (1977); S.Rep. No. 95–989, p. 22 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5808, 6266, ("use of the term throughout Title 11"). "The definition of 'debt' is intentionally broad not only to ensure the debtor a meaningful discharge but to guarantee as many creditors as possible the right to participate in the distribution of the property of the estate." *Kelly v. Robinson,* dissent, 107 S.Ct. at 365.

If Congress desired, for policy reasons, to preclude a state criminal defendant in bankruptcy from nonpayment of an order of restitution, it is unlikely that it would do so by limiting the definition of "claim" and "debt". A more effective means to this end would be achieved by altering the dischargeability provisions under the Code. An obvious example of this is alimony and child support. When Congress decided that one should not be able to escape these obligations in bankruptcy, it made these obligations nondischargeable under all chapters of the Code, it did not alter the

definition of "debt" to exclude alimony and child support.

It should be noted that on July 24, 1987 the Senate passed S. 548 Title III. This title proposes an amendment to § 523(a) of the Bankruptcy Code to make any restitution debt arising from a violation of the state law nondischargeable in bankruptcy. This subsection of § 523 would then not be subject to discharge pursuant to § 1328(a) of the Code. *See,* Senate Report 100–119. This title would only apply to a case filed after June 23, 1987. As such, we must apply the law as written and hold that when the present case was filed a restitution debt was dischargeable in a Chapter 13 case.

The dissent concludes that in the spirit of federalism, the policy of federal court deference to state criminal judgments mandates an interpretation of the Bankruptcy Code provisions to prohibit the discharge of criminal sentences including restitution. However, we believe that equal consideration should be given to the concept of separation of powers which does not provide the judiciary with the power to legislate. As stated, Congress is aware of this problem and is acting to cure any defects in the Code. We believe that the alterations which are to take place should be done by Congress, not by a court in anticipation of how Congress would or should act.

Having found that restitution is a debt, we hold that such a debt is dischargeable in a Chapter 13 bankruptcy. Section 1328(a) of the Bankruptcy Code excepts from discharge only alimony, maintenance, and support pursuant to § 523(a)(5) and long-term debts pursuant to § 1322(b)(5). We recognize that the result, based upon *Kelly v. Robinson,* would be different in a Chapter 7, an individual Chapter 11, or a Chapter 12 bankruptcy case because § 523(a)(7) would apply in these cases to a debt of restitution. However, we hold that *Kelly v. Robinson* does not extend to a Chapter 13 proceeding. *In re Johnson-Allen,* 69 B.R. 461, 15 B.C.D. 638 (Bankr.E.D.Pa.1986), also held that *Kelly v. Robinson* does not extend to Chapter 13 cases. That court stated that the Supreme Court must have been aware that "its chosen basis for its ruling did not

extend the scope of its decision to Chapter 13 cases, as the dissent expressly points out that the Court's approach leaves this issue open. *See,* 107 S.Ct. at 366 n. 6." *Johnson-Allen* at 641.

We affirm the bankruptcy court's order. To the extent that the debt to Boylan was provided for in the debtor's Chapter 13 plan it shall be paid pursuant to the terms of the plan. However, to the extent that the debt to Boylan or the State remains it shall be treated as a dischargeable debt.

VOLINN, Bankruptcy Judge, dissenting:

The opening sentence of *Kelly v. Robinson,* 479 U.S. ——, 107 S.Ct. 353, 93 L.Ed. 2d 216 (1986), by specifically limiting its dispositive application to Chapter 7, presaged the need for resolution of the issue before us. As the dissent observed, the majority opinion's reliance on 11 U.S.C. § 523(a)(7) "leaves open the possibility that such obligations will be dischargeable under Chapter 13." 107 S.Ct. at 366 n. 6 (Marshall, J., dissenting). This possibility exists due to the "super discharge" available to a Chapter 13 debtor who completes all payments under the plan. Such a debtor receives a broader discharge under 11 U.S.C. § 1328(a) than he or she would receive under 11 U.S.C. § 1328(b) if the payments were not completed. *See* 11 U.S.C. § 523(a); *compare* 11 U.S.C. § 1328(a)(2) with § 1328(c)(2). A Chapter 13 debtor who lives up to the plan is entitled to discharge *any* debt listed in 11 U.S.C. § 523(a), except for § 523(a)(5), maintenance and child support. Therefore, a § 523(a)(7) debt can be dischargeable under 11 U.S.C. § 1328(a), even though it is nondischargeable under 11 U.S.C. § 1328(b) or in a Chapter 7 case.

Although a strict reading of the Code might support treating Chapter 13 differently from Chapter 7 in this context, I believe that the rationale of *Kelly v. Robinson, supra,* is dispositive, and therefore dissent.

### I.

### A.

In *Kelly v. Robinson, supra,* the Chapter 7 debtor sought to discharge a restitu-

tion obligation imposed by the state court as a condition of her suspended sentence for larceny in the second degree. The U.S. Supreme Court expressly declined to address whether the restitution obligation was a "debt" within the meaning of the Bankruptcy Code. Instead, the Court held that 11 U.S.C. § 523(a)(7) "preserves from discharge any condition a state criminal court imposes as part of a criminal sentence." 107 S.Ct. at 361. Section 523(a)(7) excepts from discharge any debt to the extent that it "is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit,[1] and is not compensation for actual pecuniary loss." The Court decided that criminal restitution met these two requirements under the Code *as a matter of law:*

> In our view, neither of the qualifying clauses of § 523(a)(7) allows the discharge of a criminal judgment that takes the form of restitution. The criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole. Thus, it is concerned not only with punishing the offender, but also with rehabilitating him. Although restitution does resemble a judgment 'for the benefit of' the victim, the context in which it is imposed undermines that conclusion. The victim has no control over the amount of restitution awarded or over the decision to award restitution. Moreover, the decision to impose restitution generally does not turn on the victim's injury, but on the penal goals of the State and the situation of the defendant ...

> .    .    .    .    .

Because criminal proceedings focus on the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation, we conclude that restitution orders imposed in such proceedings operate 'for the benefit of' the State. Similarly, they are not assessed 'for ... compensation' of the victim. The sentence following a criminal convic-

tion necessarily considers the penal and rehabilitative interests of the State. Those interests are sufficient to place restitution orders within the meaning of § 523(a)(7).

107 S.Ct. at 362–63.

### B.

The majority, here, focuses on the nature of the restitution obligation as a claim or debt, as did the court below, which in turn relied on the reasoning of the circuit court opinion in *Kelly v. Robinson*. The Supreme Court, in reversing the circuit, adverted at length to the circuit's claim/debt analysis which provided a rationale for application of the discharge. The Court, in effect, held that the principle of federalism was overriding:

> In this case, we must consider the language of §§ 101 [definitions of claims and debts] and 523 in light of the history of bankruptcy court deference to criminal judgments and in light of the interests of the States in unfettered administration of their criminal justice systems.

107 S.Ct. at 358.

After reviewing the treatment of criminal judgments under the Bankruptcy Act of 1898, the Court concluded that Congress enacted the Bankruptcy Code "against the background of an established judicial exception to discharge for criminal sentences, including restitution orders." 107 S.Ct. at 359. The Court then said:

> Our interpretation of the Code also must reflect the basis for this judicial exception, *a deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings.* The right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States. This Court has emphasized repeatedly 'the fundamental policy against federal interference with state criminal prosecutions.' *Younger v. Harris,* 401

---

**1.** The victim in *Kelly v. Robinson* was a government agency, so the first requirement of 11 U.S.C. § 523(a)(7) was clearly met. As pointed out by the dissent, the majority opinion inter-

preted this requirement broadly enough to cover cases in which the victim is, as here, a private individual. *See* 107 S.Ct. at 364 n. 3 (Marshall, J., dissenting).

U.S. 37, 46, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 (1971).

107 S.Ct. at 360. (Emphasis added.) Later the Court also said:

... This Court has recognized that the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief. See *Younger v. Harris,* 401 U.S., at 44–45, 91 S.Ct. at 750–51. *This reflection of our federalism also must influence our interpretation of the Bankruptcy Code in this case.*

107 S.Ct. at 361. (Emphasis added.)

The majority fails to address the federalism rationale which was held to be paramount by the U.S. Supreme Court in *Kelly.* The principle of federalism as it concerns insulation of "the results of state criminal proceedings" from a bankruptcy discharge should be no less applicable in Chapter 13 than it is in Chapter 7.

## II.

It could be contended that because Chapter 13 provides for repayment of creditors by virtue of a plan, there, is a rehabilitative aspect to it which provides counterbalancing policy considerations not present in Chapter 7; that because of this substantial distinction, the courts should not lightly negate or neutralize the super discharge which Congress provided as an incentive for the debtor to commit to a repayment plan under Chapter 13 rather than to leave creditors high and dry under Chapter 7.

Developing case law attenuates such an argument. The case of *In re Goeb,* 675 F.2d 1386 (9th Cir.1982), held that the test for a good faith Chapter 13 plan did not require substantial repayment to unsecured creditors. In that case the debtors' primary purpose was to restructure their tax payments over a five year period. Under the plan, priority and secured creditors were to be paid in full. Unsecured creditors were to be paid one cent on the dollar. The trial court refused to confirm. The circuit reversed, concluding that the standard for confirmation should be "good faith," which does not necessarily include substantial payment to unsecured creditors. *See also Downey Savings & Loan Ass'n v. Metz (In re Metz),* 820 F.2d 1495 (9th Cir.1987), discussing cases approving zero payment plans.

In Chapter 13 cases that seek to retire claims arising from intentional torts, courts are divided on the question of good faith. *See, e.g., In re Slade,* 15 B.R. 910 (9th Cir. BAP 1981), affirming confirmation of a plan where the debtor sought to retire a $25,000 embezzlement debt; *In re Brock,* 47 B.R. 167, 170 (Bankr.S.D.Cal.1985), where the plan was rejected because it was found that the Chapter 13 had been filed solely to discharge an embezzlement debt.

These cases demonstrate that the discretionary basis for best efforts, bona fide effort and good faith, can result in debtors being able to discharge a restitution obligation without any or only a token payment. This is further emphasized by Section 1328(b), which provides for a best efforts discharge even where the plan is not complied with, so long as the creditors get what they would receive in a Chapter 7— which in most cases would be little or nothing. The policy considerations stated by *Kelly v. Robinson, supra,* would preclude such a result.

## CONCLUSION

The propriety of the injunction entered by the court below is controlled by the principles of federalism stated in *Kelly v. Robinson, supra.* In my view, the Order After Hearing for Preliminary Injunction should be reversed to the extent that it enjoined the State of California, its political subdivisions, agents, and employees, from enforcing the restitution order against Charles C. Heincy in the Superior Court criminal case. I therefore respectfully dissent.