871 F.2d 421
 57 USLW 2583, 20 Collier Bankr.Cas.2d 966,
19 Bankr.Ct.Dec. 280,
Bankr. L. Rep. P 72,820
 In re Lorraine JOHNSON-ALLEN.
COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE
v.
Lorraine JOHNSON-ALLEN.
In re Ruby STEFFLER a/k/a Ingrid J. Steffler.
COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF PUBLIC WELFARE
v.
Ruby STEFFLER a/k/a Ingrid J. Steffler.
Appeal of Lorraine JOHNSON-ALLEN and Ruby Steffler.
In re Edward and Debora DAVENPORT.
Edward and Debora DAVENPORT
v.
COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF PUBLIC WELFARE
and Court of Common Pleas of Bucks County, and
Edward Sparkman, Trustee.
Appeal of Edward and Debora DAVENPORT.
 Nos. 88-1610, 88-1635.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 12, 1988.
Decided March 28, 1989.
Rehearing and Rehearing In Banc Denied April 27, 1989.
 
 David A. Searles (argued), Eric L. Frank, Community Legal Services, Inc., Philadelphia, Pa., for appellants.
 Mary B. Seiverling (argued), Deputy Atty. Gen., Harrisburg, Pa., for appellee.
 Harriet R. Brumberg, Asst. Dist. Atty., Philadelphia County, George C. Yatrone, Dist. Atty., Berks County, District Attorneys' Ass'n of Pennsylvania, Philadelphia, Pa., amicus curiae.
 Before GIBBONS, Chief Judge, and HUTCHINSON and ROSENN, Circuit judges.
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 These consolidated appeals raise an important issue, particularly for governmental agencies engaged in public assistance, of whether criminal restitution imposed as a penalty for welfare fraud constitutes a debt dischargeable under Chapter 13 of the Bankruptcy Code, 11 U.S.C.A. Sec. 1301, et seq. (West 1979 & Supp.1988). The bankruptcy court, in two separate opinions, held that restitution obligations constitute dischargeable debts under Chapter 13. Appellees, the Pennsylvania Department of Public Welfare (DPW) and the Court of Common Pleas of Buck County, Adult Probation and Parole Department, (collectively, the State), appealed, and the United States District Court for the Eastern District of Pennsylvania reversed. Debtors appealed to this court.[1] We reverse the judgments of the district court.
 
 I.
 
 2
 The facts in these cases are not in material dispute. On September 17, 1985, the Davenports entered guilty pleas to the crime of welfare fraud in Bucks County, Pennsylvania Common Pleas Court. Each was sentenced to one year probation and was ordered to make criminal restitution payments of $208 per month, beginning in December 1986, until a total of $2,072.40 had been remitted. Payments were to be sent to the County Probation Department which, in turn, was to forward them to the DPW.
 
 
 3
 On May 25, 1987, the Davenports filed a voluntary petition under Chapter 13 of the Bankruptcy Code. The criminal restitution obligation, listed as an unsecured debt payable to the DPW, was to receive treatment equal to other unsecured creditors under the plan. When the Davenports failed to make restitution payments as originally ordered, the Probation Department commenced violation of probation proceedings. The Davenports notified the Probation Department on July 20, 1987, of the pending bankruptcy proceeding, and requested withdrawal of the probation violation charges. When the Probation Department refused to withdraw the charges, the Davenports commenced an adversary action in the bankruptcy court seeking a declaration as to the dischargeability of the criminal restitution obligation.
 
 
 4
 On October 20, 1987, the bankruptcy court confirmed the Davenports' Chapter 13 plan without objection from any creditor and with the express approval of the standing Chapter 13 trustee. On October 19, 1987, the Probation Department proceeded with a violation of probation hearing in Bucks County. The Common Pleas Court denied the motion to revoke probation, declaring that the restitution order "still stands."
 
 
 5
 Following trial on the issue of dischargeability, the bankruptcy court held that the restitution obligation was dischargeable under Chapter 13. In re Davenport, 83 B.R. 309 (Bankr.E.D.Pa.1988). On appeal, the district court reversed, holding that the restitution obligation was not a debt as defined by the Bankruptcy Code, and that a discharge would violate principles of federalism as enunciated in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Davenport v. Pennsylvania, 89 B.R. 428 (E.D.Pa.1988). On July 8, 1988, after successfully completing their Chapter 13 plan, the bankruptcy court discharged the Davenports under Chapter 13, 11 U.S.C.A. Sec. 1328(a).
 
 
 6
 In a separate prosecution, Lorraine Johnson-Allen pleaded guilty in a state court to four counts of welfare fraud on June 18, 1985. The court subsequently sentenced her to probation and ordered restitution of $6,300 which was to be paid in ten dollar monthly installments. Johnson-Allen continued payments until she filed her bankruptcy petition under Chapter 13 on March 14, 1986. Like the Davenports' plan, Johnson-Allen's Chapter 13 plan listed the DPW as an unsecured creditor and provided for payments to be paid to the DPW in amounts equal to all other general unsecured creditors. Johnson-Allen advised the DPW and the Philadelphia County Probation Department of the filing, stating that she believed, on advice of counsel, that the filing stayed collection of the restitution obligation and that the obligation would be discharged upon completion of the plan payments. On advice from the Probation Department that the payments were not stayed, Johnson-Allen resumed payments pending disposition of this proceeding. On February 11, 1987, no objections having been filed, the bankruptcy court confirmed Johnson-Allen's plan. No one appealed from the confirmation of the plan.
 
 
 7
 In a third prosecution in a state court, Ruby Steffler also pleaded guilty to welfare fraud on January 17, 1984. The court placed her on probation and ordered her to make restitution in the amount of $5,506.64, in payments of twenty dollars per month. Steffler also filed a bankruptcy petition under Chapter 13, listing the DPW as an unsecured creditor and accorded the DPW treatment equal to that of the other unsecured creditors. Shortly after filing, she informed the County Probation Department that she would cease restitution payments. However, upon institution of violation of probation proceedings, Steffler resumed her payments. On May 15, 1987, the bankruptcy court confirmed, without objection, her Chapter 13 plan, and no creditor appealed from the confirmation order.
 
 
 8
 The bankruptcy court consolidated the Steffler and Johnson-Allen proceedings. The court granted summary judgment for both debtors, holding that the restitution obligations were dischargeable under Chapter 13. In re Johnson-Allen, 69 B.R. 461 (Bankr.E.D.Pa.1987). On appeal, the district court reversed, again holding that discharge would interfere with the well-established principles of comity and federalism stated in Younger. Pennsylvania Dept. of Public Welfare v. Johnson-Allen, 88 B.R. 659 (E.D.Pa.1988).
 
 II.
 
 9
 The threshold issue in this case is whether the dischargeability issue is ripe for determination. If a debtor completes payments under the Chapter 13 plan, discharge of debts is controlled by 11 U.S.C.A. Sec. 1328(a). As discussed infra at Section III B, such discharge would encompass restitution obligations. However, if the debtor fails to complete payments, section 1328(b) controls which would preclude discharge of the restitution order. See Kelly v. Robinson, 479 U.S. 36, 53, 107 S.Ct. 353, 363, 93 L.Ed.2d 216 (1986). The Court of Appeals for the Ninth Circuit recently held under similar facts that the dischargeability issue is not ripe for resolution until the plan has been concluded and it is known which discharge provision will apply. In re Heincy, 858 F.2d 548, 550 (9th Cir.1988); see also In re Carroll, 61 B.R. 178, 179 (Bankr.D.Ore.1986).
 
 
 10
 We adopt the reasoning of the Ninth Circuit. Because neither Steffler nor Johnson-Allen has completed the Chapter 13 plan, the issue of dischargeability is not ripe, and we will therefore reverse and remand to the district court with directions to dismiss their appeals without prejudice for lack of an appealable order. However, because the Davenports have completed payments under their Chapter 13 plan and have received a discharge of their debts under 11 U.S.C.A. Sec. 1328(a), the dischargeability issue is ripe for resolution by this court. We therefore turn now to the merits of that issue with respect to the Davenports' claims.
 
 III.
 
 11
 The critical issue before this court--whether the restitution obligation is a dischargeable debt--is comprised of two separate and distinct sub-issues. First, whether the restitution obligation constitutes a debt under the Code? Second, assuming the obligation is a debt, whether that debt is dischargeable under Chapter 13 upon completion of payments under the plan? Because resolution of these issues involves questions of law, our review is plenary.
 
 A.
 
 12
 The Bankruptcy Code defines a "debt" as a "liability on a claim," and further defines a claim as "a right to payment." 11 U.S.C.A. Secs. 101(11), 101(4) (West 1979).[2] In determining whether an obligation constitutes a claim within the meaning of the Code, Congress advised that the definition of claim is to be given the
 
 
 13
 broadest possible definition ..., that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court.
 
 
 14
 H.Rep. No. 595, 99th Cong., 2d Sess. 309, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, at 5963, 6266; S.Rep. No. 989, 95th Cong., 2d Sess. 21-22, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5807-08. This advice has been well taken by the courts. See, e.g., Ohio v. Kovacs, 469 U.S. 274, 279, 105 S.Ct. 705, 708, 83 L.Ed.2d 649 (1985); In re Remington Rand Corp., 836 F.2d 825, 829 (3d Cir.1988). In addition, Congress intended the concepts of "claim" and "debt" to be coextensive. See House Report at 310, reprinted in U.S.Code Cong. & Admin.News at 6267; Senate Report at 23, reprinted in 1978 U.S.Code Cong. & Admin.News at 5809; see also In re Robinson, 776 F.2d 30, 36 (2d Cir.1985), rev'd on other grounds sub nom. Kelly v. Robinson, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986); Kelly, 479 U.S. at 58, 107 S.Ct. at 365 (Marshall, J., dissenting).
 
 
 15
 Notwithstanding the overwhelming acceptance of the broad nature of the term "claim," the majority of bankruptcy courts have rejected the contention that restitution obligations are "debts" within the meaning of the Code. See, e.g., In re Kohr, 82 B.R. 706, 712 (Bankr.M.D.Pa.1988); In re Thompson, 77 B.R. 646, 648 (Bankr.E.D.Tenn.1987); In re Oslager, 46 B.R. 58, 62 (Bankr.M.D.Pa.1985); In re Pellegrino, 42 B.R. 129, 132 (Bankr.D.Conn.1984); In re Johnson, 32 B.R. 614, 616 (Bankr.D.Colo.1983); In re Button, 8 B.R. 692, 694 (Bankr.W.D.N.Y.1981). Without resolving the issue, the Supreme Court recently lent this position some credence when it declared that it had "serious doubts" as to whether Congress intended restitution obligations to constitute debts. Kelly, 479 U.S. at 50, 107 S.Ct. at 361.
 
 
 16
 The conclusions drawn by the foregoing bankruptcy courts rest primarily upon combinations of five different arguments relating both to the definition of debt and to the dischargeability of criminal penalties. Those arguments include: (1) the victim does not personally possess a right to the restitution payment as ordered by the court; (2) a discharge of restitution interferes with state criminal proceedings, violating well-established principles of federalism; (3) Congress revised the Code in 1978 against the background of a judicially created exception for the discharge of criminal penalties; (4) discharge of the restitution obligation would create a "haven for criminals" in contravention of congressional intent; and (5) restitution is intended primarily to rehabilitate the offender and not to compensate the victim. Although we agree that facially there is considerable merit to these arguments, we are constrained to disagree with the ultimate conclusion that the restitution obligation is not a debt under the Code.
 
 
 17
 As with any statutory interpretation, we begin with the plain language of the statute. The State properly observes that, under the terms of the Code, the restitution obligation is not considered a "claim" or "debt" unless that obligation creates a right to payment. Under Pennsylvania's restitution statute, where a person is convicted for stealing, converting, or otherwise unlawfully obtaining property, the court is authorized to order restitution in addition to any other punishment properly prescribed for the crime. 18 Pa.C.S.A. Sec. 1106(a) (Purdon 1983). The statute, which specifically defines restitution as "[t]he return of the property of the victim or payments in cash or the equivalent thereof pursuant to an order of the court," limits the amount of restitution to "the return of the actual property or its undisputed dollar amount." 18 Pa.C.S.A. Secs. 1106(d), 1106(h). If the victim receives any civil award, that award must be reduced by the amount paid under the criminal judgment. 18 Pa.C.S.A. Sec. 1106(g). However, unlike a civil award, restitution payments are made directly to the probation department, not to the victim, and the Department then forwards those payments to the victim. 18 Pa.C.S.A. Sec. 1106(e). Furthermore, the restitution statute grants the probation department sole authority to institute judicial proceedings for the enforcement of the restitution order. 18 Pa.C.S.A. Sec. 1106(f).
 
 
 18
 The State contends that the enforcement provision, which denies the victim any authority to enforce the criminal order, compels the conclusion that the victim has no right to payment of the restitution order and that the order does not, therefore, create a debt. Although, as mentioned, this argument has found favor in many bankruptcy courts, see supra at 9, and also in the Superior Court of Pennsylvania where in Commonwealth v. Mourar, 349 Pa.Super. 583, 603, 504 A.2d 197, 208 (1986), vacated and remanded for further proceedings, 517 Pa. 83, 534 A.2d 1050 (1987), the court held that an order of restitution does not create a debtor-creditor relationship between the offender and victim, we are unable to agree that this rational be applied to the Bankruptcy Code.
 
 
 19
 As noted, Congress intended the concept of "claim," and, by association, the concept of "debt," to be given the "broadest possible definition." "Where the language of the statute is clear, 'only the most extraordinary showing of contrary intentions' justify altering the plain meaning of a statute." Malloy v. Eichler, 860 F.2d 1179, 1183 (3d Cir.1988) (quoting Garcia v. United States, 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984)). By focusing solely on the offender-victim relationship, however, both the DPW and the courts above unduly restrict those definitions. Even the Superior Court in Commonwealth v. Mourar, supra, recognized that although "the victim cannot enforce the order of restitution ... he could execute upon a civil judgment." 504 A.2d at 208. The only limitation imposed by the language of the Bankruptcy Code is that the obligation must give rise to a "right to payment." There is no requirement that that right be enforceable by any particular person or entity. Nor does the statute mandate such a restriction.
 
 
 20
 As the Court of Appeals for the Second Circuit noted under similar facts, the language of section 101(4) and the legislative history of the Code indicate that "Congress intended 'claim' to encompass any right held by any person or entity to enforce any money obligation of the debtor." To hold otherwise would "produce the anomalous result that no holder of a right to restitution could participate in the bankruptcy proceeding or receive any distributions of the debtor's assets in liquidation." In re Robinson, 776 F.2d at 35-36. That court ultimately concluded that "any right to the payment of restitution is a claim within the meaning of the Code; and that if any person or entity has a right to receive a payment of restitution from the bankruptcy debtor, the obligor has a debt within the meaning of the Code." Id. at 36; see also Kelly, 479 U.S. at 58, 107 S.Ct. at 365 (Marshall, J., dissenting); In re Heincy, 78 B.R. 246, 248-49 (Bankr. 9th Cir.1987) (restitution obligation constitutes debt within meaning of Code), rev'd on other grounds, 858 F.2d 548 (9th Cir.1988); In re Cancel, 85 B.R. 677, 678 (Bankr.N.D.N.Y.1988) (same); In re Cullens, 77 B.R. 825, 828 (Bankr.D.Colo.1987) (same); In re Brown, 39 B.R. 820, 822 (Bankr.M.D.Tenn.1984) (same).
 
 
 21
 We find the reasoning of the Court of Appeals in In re Robinson, supra, persuasive and conclude that the restitution obligation constitutes a debt so long as any person or entity has a right to enforce that obligation. Here, regardless of whether the victim, the DPW, may enforce the order of restitution, there is no question that the Probation Department may enforce the obligation through the institution of violation of probation proceedings. 18 Pa.C.S.A. Sec. 1106(f). Certainly there can be no greater enforcement mechanism than the threat of revocation of probation and the imposition of incarceration. See In re Robinson, 776 F.2d at 38. Moreover, as the court observed in In re Robinson, 776 F.2d at 35-36, the interpretation suggested by the State would lead to the incredible result that an order of restitution in a state criminal proceeding would preclude the victim's participation in the bankruptcy proceeding or recovery of any distribution under the debtor's plan of arrangement. We conclude, therefore, that, because the debtors here have incurred a very real obligation to which the Probation Department holds a right to payment within the meaning of section 101(4) of the Code, that obligation constitutes a "debt" under the Code.
 
 
 22
 Although the Supreme Court in reviewing the Court of Appeals' decision in In re Robinson expressed doubt as to whether the restitution obligation is a debt, that doubt is founded upon factors other than the plain language of the statute. See Kelly, 479 U.S. at 43-44, 107 S.Ct. at 357-58. Specifically, the concerns of the Court, which we will address more fully with respect to the issue of dischargeability, are based upon "the history of bankruptcy court deference to criminal judgments" and "the interests of the States in unfettered administration of their criminal justice systems." Id. We believe, however, particularly in light of the Court's conclusion in Kelly, that neither of these concerns alters the conclusion that a restitution obligation is a debt.
 
 
 23
 In Kelly, the Supreme Court held, without deciding the debt issue, that a restitution obligation is not dischargeable under Chapter 7 because that chapter specifically protects from discharge "any debt"
 
 
 24
 to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss.
 
 
 25
 479 U.S. at 50, 107 S.Ct. at 361 (quoting 11 U.S.C.A. Sec. 523(a)(7)). The Court determined that this provision was plainly intended to codify the judicially created rule that criminal penalties are not dischargeable. As the Court stated, "Section 523(a)(7) protects traditional criminal fines; it codifies the judicially created exception to discharge for fines." Id. at 51, 107 S.Ct. at 362. Finding that restitution focuses primarily on rehabilitation and punishment, rather than upon compensation for the actual loss of the victim, the Court concluded that Congress excepted restitution obligations from discharge under Chapter 7 by virtue of section 523(a)(7).
 
 
 26
 Addressing the issue left unanswered by the Court, Justice Marshall, in his dissent, further illuminated the Court's analysis of the dischargeability issue, when he stated that it compels the conclusion that restitution is a debt. Noting that only debts are subject to discharge under the Code, Justice Marshall reasoned that if restitution orders and other criminal penalties were not debts, there would be no need to except them from discharge under Chapter 7. Kelly, 479 U.S. at 58, 107 S.Ct. at 365. We find this reasoning persuasive and conclude that Congress must have intended that such obligations were debts within the meaning of the Code. See Kelly, 479 U.S. at 58, 107 S.Ct. at 365 (Marshall, J., dissenting); In re Heincy, 78 B.R. at 248; In re Cullens, 77 B.R. at 828.
 
 
 27
 The Court's analysis in Kelly also provides an apt response to the argument that criminal restitution is not a debt when such restitution is ordered primarily to rehabilitate the offender rather than to compensate the victim. As the Court held, section 523(a)(7) excepts from discharge criminal restitution precisely because that penalty is imposed primarily for punitive and rehabilitative purposes, and only incidentally for purposes of compensating the victim. The statutory exception to discharge logically leads to the conclusion not only that criminal restitution orders are debts under the Code but also that such penalties are debts despite the underlying motivations of punishment and rehabilitation. Therefore, we hold that restitution obligations constitute debts even when the state's primary objectives in imposing such obligations are to rehabilitate and to punish the offender, rather than to compensate the victim.
 
 
 28
 The conclusion that criminal restitution constitutes a debt under the Code is consistent not only with the statutory scheme, but also comports with Congress' objective of encouraging debtors to select the repayment option available under Chapter 13, rather than to opt for straight liquidation under Chapter 7.[3] House Report at 227, reprinted in 1978 U.S.Code Cong. & Admin.News at 6077. If restitution obligations were not part of the Chapter 13 plan, payments in restitution conceivably could deplete all the debtor's resources before any distribution is made to the other creditors. As a result, creditors would be more reluctant to confirm such a plan, making the Chapter 13 option entirely unavailable to some debtors. Such a result is contrary to Congress' objective of expanding the availability of the Chapter 13 option. Therefore, both the language of the statute and the intent of Congress support the conclusion that the criminal restitution obligation is a debt under the Code.
 
 
 29
 In response to the conclusion that criminal restitution is a debt, the State also relies on the legislative history of the Code, focusing on Congress' statement that "[t]he bankruptcy laws are not a haven for criminal offenders." Senate Report at 51, reprinted in 1978 U.S.Code Cong. & Admin.News at 5837; House Report at 342, reprinted in U.S.Code Cong. & Admin.News at 6299. Although many courts have attached significance to this statement as support for the conclusion that restitution obligations are not debts, see, e.g., In re Pellegrino, 42 B.R. at 234; In re Johnson, 32 B.R. at 616, we find this argument unpersuasive. As an initial matter, we note that Congress intended the comment as an explanation for the "criminal proceedings" exception to section 362 which otherwise automatically stays all actions pending disposition by the bankruptcy court. 11 U.S.C.A. Sec. 362. Nowhere in the discussion of either claim or debt, however, does Congress express a similar intention to restrict those definitions to exclude obligations arising from criminal penalties.
 
 
 30
 Moreover, the lack of such restrictions respecting the definitions of "claim" or "debt" is not remarkable. As discussed, Congress intended those concepts to be accorded broad and sweeping definitions. The language of the statute reflects that intention, employing inclusive, rather than exclusive, language. On the other hand, Congress elsewhere restricted application of the Code to exclude obligations arising from criminal penalties. Most notable of these exceptions is the exception to discharge for penalties and fines as provided in section 523, discussed infra at Part B. Therefore, because Congress has effectuated its policy of preventing the Code from becoming a "haven for criminals" by adopting appropriately restrictive language for specific provisions of the Code, such as sections 362(b) and 523(a), its silence on this subject with respect to other provisions is equally telling and may not be discounted. See In re Robinson, 776 F.2d at 37-38; In re Heincy, 78 B.R. at 248. We thus decline to second-guess Congress and refuse to insinuate language into its legislation excepting criminal penalties from the definitions of "claim" or "debt."
 
 
 31
 Having concluded that restitution obligations are debts within the meaning of the Code, we turn now to the issue of whether such debts are excepted from discharge under Chapter 13.
 
 B.
 
 32
 Upon completion of payments under the repayment plan, Chapter 13 requires the court to discharge all debts provided for in the plan with only two exceptions. Neither of the exceptions, however, pertains to penalties such as criminal restitution.[4] Because the plain language of the chapter does not except from discharge debts for criminal restitution, we conclude that such debts are dischargeable under Chapter 13.
 
 
 33
 The statutory provisions for the discharge of debts and exceptions thereto under Chapter 7 also support the conclusion that restitution debts are dischargeable under Chapter 13. Unlike Chapter 13, Chapter 7 excepts ten categories of debt from discharge as set forth in section 523(a), including, as discussed, section 523(a)(7) which excepts from discharge any debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit...." As the Court determined in Kelly, criminal restitution obligations fall within the category of "a fine, penalty, or forfeiture" under section 523(a)(7). Although Congress did incorporate into Chapter 13 one of the ten exceptions under section 523(a), it did not, notably, incorporate the provision relevant here, section 523(a)(7) pertaining to criminal restitution, or any facsimile thereof. See supra note 3. Congress' considered decision to adopt only one of the section 523(a) exceptions to discharge for Chapter 13 and its concomitant failure to adopt the criminal penalties provision or any similar exception compels the conclusion that such penalties, including criminal restitution, are dischargeable under Chapter 13. Cf. Kelly, 479 U.S. at 50, 107 S.Ct. at 361.
 
 
 34
 We are mindful of the Court's admonition that "the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief." Kelly, 479 U.S. at 49, 107 S.Ct. at 361. However, where Congress has enacted legislation which arguably affects state criminal proceedings, it is not the function of this court to cure any perceived "defects" in that legislation. That authority is granted to Congress alone. Excepting criminal restitution from discharge, accordingly, is a matter for the Congress, not for the courts. Here, Congress has codified the criminal penalties exception to discharge and has chosen not to apply the exception to Chapter 13 bankruptcy. Regardless of the potential effect on state criminal proceedings, therefore, we are constrained to conclude that the criminal restitution debt is dischargeable under Chapter 13.
 
 
 35
 We are equally mindful that Congress revised the Code in 1978 against a background of the judicial exception to the discharge of criminal penalties. If Congress had merely amended the Code in 1978 without either adopting or rejecting that exception, we would assume that Congress had acquiesced to its continued application. However, Congress did more than merely legislate against a background of an existing judicial exception; it codified the judicial exception and selectively incorporated it into the amended Code. Although Congress applied the codified exception to discharge under Chapter 7, it opted not to apply it to discharge under Chapter 13. Assuming that Congress desired to limit the application of that longstanding judicial exception, we are aware of no better method for Congress to achieve that goal other than to codify the rule and to apply, or to omit to apply, that rule to the various chapters of the Code, as it has done. Where, as here, Congress has codified a judicial exception and only incorporated it into specific provisions of a statute, we believe it would be error for this court to inject that exception into the other provisions of the statute. We conclude, therefore, that Congress intended to vary the application of the criminal penalties exception under the Code and did not intend to except such penalties from discharge under Chapter 13.
 
 IV.
 
 36
 Accordingly, the judgment of the district court as to appellants Johnson-Allen and Steffler will be reversed and their cases remanded to the district court with directions to dismiss their appeals without prejudice because their claims were not ripe for resolution. The judgment of the district court with respect to the claims of the Davenports will be reversed and their case remanded to the district court with directions to affirm the order of the bankruptcy court.
 
 
 37
 Costs in the appeals of Johnson-Allen and Steffler will be taxed to each of them separately. With respect to the Davenports, costs will be taxed to the DPW, the appellee.
 
 
 38
 HUTCHINSON, Circuit Judge, dissenting.
 
 
 39
 The majority today holds that criminal restitution orders are "debts" within the meaning of Sec. 101(4) of the Bankruptcy Code and that they are dischargeable under Chapter 13 of the Code. If the only basis for leaving criminal restitution orders undisturbed in bankruptcy were their non-dischargeability, I would agree with the majority that the textual differences between the Chapter 7 and 13 discharge sections would logically make these orders dischargeable in Chapter 13 proceedings. My disagreement with the majority lies in the threshold determination of whether such orders are debts. I am not persuaded by the majority's analysis on this point in the face of the strong dicta in Kelly v. Robinson, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), where the Supreme Court expressed "serious doubts whether Congress intended to make criminal penalties 'debts' within the meaning of Sec. 101(4)" of the Code. Id. at 50, 107 S.Ct. at 361. I believe that the concerns which prompted the Supreme Court's reservations require a conclusion that restitution obligations imposed as part of criminal sentences are not debts and therefore are not subject to discharge in bankruptcy. Accordingly, I respectfully dissent.[1]
 
 
 40
 In Kelly, the Supreme Court held that Sec. 523(a)(7) of the Code preserves criminal restitution orders from discharge in Chapter 7 proceedings. Although it declined to decide whether such orders are debts under the Code, the Kelly Court voiced grave doubts as to whether they are debts before even turning to the construction of Sec. 523(a)(7). In doing so, it strongly suggested that the longstanding judicially created exception to bankruptcy court jurisdiction over criminal restitution orders was not altered by the Bankruptcy Code of 1978. This suggestion is strengthened by the Supreme Court's related observation that while "debt" is broadly drafted, "nothing in the legislative history of these sections compels the conclusion that Congress intended to change the state of the law with respect to criminal judgments." Id. at 50 n. 12, 107 S.Ct. at 361 n. 12.
 
 
 41
 The Kelly Court considered two factors in construing Sec. 523(a)(7). They also underlie its comments on the debt issue. It first observed that the Code must be interpreted "in light of the history of bankruptcy court deference to criminal judgments." Id. at 44, 107 S.Ct. at 358. While the most natural construction of the predecessor statute, the Bankruptcy Act of 1898, would have allowed the discharge of criminal penalties, "most courts refused to allow a discharge in bankruptcy to affect the judgment of a state criminal court." Id. at 45, 107 S.Ct. at 358 These courts reasoned that the bankruptcy laws affected only civil liabilities and not punishment for the violation of criminal laws, a rationale which was specifically applied to restitution orders imposed as part of criminal sentences. Id. at 45-46 & n. 6, 107 S.Ct. at 359 & n. 6. "Thus, Congress enacted the Code in 1978 against the background of an established judicial exception to discharge for criminal sentences, including restitution orders, an exception created in the face of a statute drafted with considerable care and specificity." Id. at 46, 107 S.Ct. at 359.
 
 
 42
 The Supreme Court then noted that "interpretation of the Code also must reflect the basis for this judicial exception, a deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings." Id at 47, 107 S.Ct. at 360. If criminal restitution orders were dischargeable, judgments imposed by state criminal judges would be subject to remission. The prospect of this, the Kelly Court reasoned, would impinge on the ability of state court judges to fashion the most appropriate sentences for violations of state criminal laws. Id. Observing that Congress would not lightly limit the options available to state court criminal judges, id. at 49, 107 S.Ct. at 360-61, the Kelly Court concluded that "the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief." Id. at 49, 107 S.Ct. at 361.[2]
 
 
 43
 It was "[i]n light of the established state of the law--that bankruptcy courts could not discharge criminal judgments" that the Supreme Court said, "we have serious doubts whether Congress intended to make criminal penalties 'debts' within the meaning of Sec. 101(4)." Id. at 50, 107 S.Ct. at 361. Despite this statement and the longstanding policy against granting bankruptcy courts jurisdiction over criminal restitution orders, the majority finds that Congress must have meant to include them within the definition of "debt." It finds persuasive the dissent in Kelly which reasoned that unless such orders are debts there would be no need to except them from discharge under Sec. 523(a)(7). Majority Opinion, supra at 427; Kelly, 479 U.S. at 58, 107 S.Ct. at 365 (Marshall, J., dissenting).
 
 
 44
 Just as the majority concedes that most courts have concluded that criminal restitution orders are not "debts" under the Code, Majority Opinion, supra at 424, I would, absent Kelly and the historical context to which the Supreme Court referred, have to concede logical force to the argument that if they are not debts, there is no need to deny them discharge under Sec. 523(a)(7). The Kelly Court, however, was surely aware of this argument. Its grave doubts as to whether criminal penalties are debts in the face of the dissent's reasoning indicates to me that restitution orders imposed as part of criminal sentences are not debts, despite the language of Sec. 523(a)(7).
 
 
 45
 The Supreme Court has not yet decided whether criminal restitution orders are included in the term "debt." However, it has distinguished them from other obligations, saying " '[u]nlike an obligation which arises out of a contractual, statutory or common law duty, [a criminal restitution order] is rooted in the traditional responsibility of a state to protect its citizens by enforcing its criminal statutes and to rehabilitate an offender by imposing a criminal sanction intended for that purpose.' " Id at 52, 107 S.Ct. at 362 (quoting In re Pellegrino, 42 B.R. 129, 133 (Conn.1984)).
 
 
 46
 The interpretation advocated by the debtors, and accepted by the majority, would intrude on the states' ability to choose the most efficacious means of furthering their penal interests. The interpretation is "in clear conflict with state ... laws of great importance." United States v. Ron Pair Enterprises, Inc., 290 U.S. ----, ----, 109 S.Ct. 1026, 1033, 103 L.Ed.2d 290 (1989). We are not referred to any specific legislative history which demonstrates that Congress intended to include criminal restitution orders within the meaning of "debt."[3] In the absence of such specific legislative history, I believe the dicta in Kelly apply. "If Congress had intended, by Sec. 523(a)(7) or by any other provision, to discharge state criminal sentences, 'we can be certain that there would have been hearings, testimony, and debate concerning consequences so wasteful, so inimical to purposes previously deemed important, and so likely to arouse public outrage.' " Kelly 479 U.S. at 51, 107 S.Ct. at 361-62 (quoting TVA v. Hill, 437 U.S. 153, 209, 98 S.Ct. 2279, 2309, 57 L.Ed.2d 117 (1978) (Powell, J., dissenting)); see also id. at 47, 107 S. Ct. at 359 ("if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific") (quoting Midlantic Nat'l Bank v. New Jersey Dep't of Environmental Protection, 474 U.S. 494, 501, 106 S.Ct. 755, 760, 88 L.Ed.2d 859 (1986)).[4]
 
 
 47
 The judicially created exception "reflect[s] policy considerations of great longevity and importance." Ron Pair Enterprises, Inc., --- U.S. at ----, 109 S.Ct. at 1032. The majority opinion notes that the literal terms of the Code may support the discharge of criminal judgments, but that was also true under the Bankruptcy Act of 1898. The Supreme Court has indicated to me that the policy considerations and history transcend the logic of a textual analysis. Accordingly, given this history, the complexity of the Code, the opinion of the Supreme Court in Kelly and the absence of legislative history evincing Congress's desire to alter pre-Code practice, I cannot conclude that Congress intended such a far reaching intrusion on the states' administration of their criminal justice systems as the majority's result entails.[5]
 
 
 48
 I would affirm the order of the district court holding that the Davenports' criminal restitution obligation was not affected by the discharge.
 
 
 
 [1]
 This court has jurisdiction over the appeals by virtue of its authority to review final orders of the district court in accordance with 28 U.S.C. Sec. 158(d)
 
 
 [2]
 The Code defines a claim as:
 (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
 (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.
 11 U.S.C.A. Sec. 101(4).
 
 
 [3]
 The dissent relies on the dicta in Kelly to reach a contrary conclusion because the majority has not referred to any specific legislative history which demonstrates that Congress intended to include criminal restitution orders within the meaning of "debt." The dissent's approach, however, elevates the legislative history of a statute, or its absence thereof, over the plain language of that statute. It is well-established that "[i]f the language is clear and unambiguous, and there is no 'clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.' " National Freight, Inc. v. Larson, 760 F.2d 499, 503 (3d Cir.), cert. denied, 474 U.S. 902, 106 S.Ct. 228, 88 L.Ed.2d 227 (1985) (quoting Consumer Product Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). Here, the broad, inclusive language of the statute is clear. To exclude restitution orders from the definition of "debt" would create an exception that Congress did not intend
 Moreover, as we have noted above, the scheme under the new Bankruptcy Code is plainly consistent with the conclusion that criminal restitution is a debt for purposes of Chapter 13 and carries out the congressional intent of encouraging debtors to opt for arrangements under Chapter 13 rather than liquidation under Chapter 7.
 
 
 [4]
 Specifically, Chapter 13 provides, in pertinent part:
 As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt--
 (1) provided for under section 1322(a)(5) of this title; or
 (2) of the kind specified in section 523(a)(5) of this title.
 11 U.S.C.A. Sec. 1328(a) (West 1978).
 The two exceptions include debts pertaining to alimony and child support, 11 U.S.C.A. Sec. 523(a)(5), and debts cured after default, 11 U.S.C.A. Sec. 1322(b)(5).
 
 
 [1]
 I agree with the Court that only the Davenports' appeal is ripe for disposition. See Majority Opinion, supra at 423
 
 
 [2]
 The inclusion of restitution orders in the term "debt" would also seem to affect sentencing in United States District Courts
 
 
 [3]
 The majority concludes that the statutory term "debt" is plain and unambiguous. I believe the dicta in Kelly imply otherwise. Accordingly, I believe this is "an appropriate case" to consider the absence of legislative history. See Ron Pair Enterprises, Inc., --- U.S. at ----, 109 S.Ct. at 1032 (where the statutory language is open to interpretation and the proposed interpretation conflicts with important state laws, "a court must determine whether Congress has expressed an intent to change the interpretation of a judicially created concept in enacting the Code" (emphasis added)); cf. id., at ----, 109 S.Ct. at 1037 (O'Connor, J., dissenting) (even where language of the Code is not open to interpretation, a court will look to legislative history before concluding that established pre-Code practice has been changed; "[t]he rule ... is that bankruptcy statutes will not be deemed to have changed pre-Code law unless there is some indication that Congress thought that it was effecting such a change.")
 
 
 [4]
 The majority disposes of the impact its decision will have on the states' administration of their criminal justice systems by stating that "where Congress has enacted legislation which arguably affects state criminal proceedings, it is not the function of this court to cure any perceived 'defects' in that legislation." Majority Opinion, supra at 428 (emphasis added). I think it is beyond argument that today's decision will affect the sentencing discretion of state court judges. See Kelly, 479 U.S. at 49, 107 S.Ct. at 360 (prospect of federal remission of judgments in some cases "would hamper the flexibility of state criminal judges in choosing the combination of imprisonment, fines, and restitution most likely to further the rehabilitative and deterrent goals of state criminal justice systems" (emphasis added))
 The difference between our approaches is also highlighted by the point at which these federalism concerns enter our respective analyses. The majority concludes that criminal restitution orders are debts and only addresses the impact on state criminal proceedings in discussing dischargeability. In contrast, I would consider this impact both in determining whether criminal restitution orders are debts and whether they are dischargeable. The same is true of our respective treatment of the judicial exception to discharge of criminal penalties. Although this exception rests in part on the theory that orders imposed as part of a criminal sentence do not create a debtor-creditor relationship, see id. at 45-46 n. 6, 107 S.Ct. at 358-59 & n. 6, the majority addresses it only after concluding that Congress intended to make such orders debts. By considering federalism concerns at each step, my approach is more likely to avoid construing the Code in a manner which impinges on the states' important interest in the unfettered administration of their criminal justice systems.
 
 
 [5]
 The majority finds support for its construction of "debt" in the fact that the discharge provisions of Chapter 13 are much broader than those of Chapter 7. It reasons that if criminal restitution orders are not debts, restitution payments may deplete a debtor's resources before distribution to other creditors. This, it is said, would make other creditors less likely to confirm a Chapter 13 plan and would therefore be "contrary to Congress' objective of expanding the availability of the Chapter 13 option." Majority Opinion, supra at 427
 Only debts are subject to discharge. The fact that Chapter 13 contains a very broad discharge for obligations which are debts does not necessarily mean that criminal restitution orders should be considered debts. The question is not whether Congress intended to broaden the availability of the Chapter 13 remedy, but how great it intended this expansion to be. I believe the Supreme Court teaches us that if Congress had intended to remove the power to finally define the extent to which a person convicted of crime should make restitution from the criminal courts and place it in the bankruptcy courts--by relegating his criminal restitution orders to the same status as his other obligations--it would have spoken more clearly.